UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHAD J. WENDELKEN,

    Plaintiff,

  v.

JAMES HARDIE BUILDING PRODUCTS, INC.,

    Defendant.

No. 17 CV 2797

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Plaintiff Chad Wendelken was a factory worker employed by James Hardie Building Products, Inc. Wendelken brought suit against James Hardie, claiming he was unlawfully terminated for taking leave under the Family and Medical Leave Act. James Hardie moves for summary judgment. For the reasons stated below, the motion is granted.

**I.    Legal Standards**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "To survive summary judgment, the nonmoving party must show evidence sufficient to

establish every element that is essential to its claim and for which it will bear the burden of proof at trial." *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 591 (7th Cir. 2016) (citation omitted). All facts and reasonable inferences are construed in the light most favorable to the nonmoving party. *Laborers' Pension Fund v. W.R. Weis Co., Inc.*, 879 F.3d 760, 766 (7th Cir. 2018).

**II.   Facts**

James Hardie Building Products, Inc. makes fiber-cement siding and trim, and plaintiff Chad Wendelken worked in one of its factories. [19] ¶¶ 2, 5.[1] In early 2015, Wendelken called off from work to care for his sick wife, and an assistant in the Human Resources department, Brandy Salz, suggested Wendelken apply for intermittent FMLA leave for use in the future. [19] ¶¶ 11–12. Wendelken took the advice and applied for intermittent FMLA leave to care for his wife when needed. [28] ¶¶ 2–3.

On July 18, 2015, Wendelken was supposed to work from 7:00 a.m. to 7:00 p.m., but he called to say he would not be at work that day because his wife was sick. [19] ¶ 15. At around 5:00 p.m., Wendelken took one of his daughters to a Taylor Swift concert, leaving his wife at home in the care of his mother. [19] ¶ 17. Salz saw photos of Wendelken and his daughter at the concert on Facebook and

---

[1] Bracketed numbers refer to docket numbers on the district court docket. Page numbers are taken from the CM/ECF header at the top of filings. Facts are largely taken from James Hardie's Local Rule 56.1 statement of undisputed material facts, [19], and James Hardie's response to Wendelken's statement of facts, [28]. In violation of LR 56.1, Wendelken did not respond to each numbered paragraph in James Hardie's statement of facts, choosing instead to identify a few that he disputes. *See* [24] at 3. Wendelken also impermissibly responded to paragraphs 35 through 49 collectively, instead of addressing each individually. I consider any facts not properly controverted by citation to admissible evidence to be admitted. *See* LR 56.1.

2

reported what she saw to her supervisor, Dan Rizzi. [19] ¶¶ 20–21. Rizzi, the HR manager, told Salz to place the photos in Wendelken's file but did not say much else. [19] ¶ 21.

A few days later, Salz told Rizzi that Wendelken had just told her that he was going to try to get fired by James Hardie so that he could collect unemployment while working for his brother-in-law for cash and that another employee told her Wendelken said something about leaving James Hardie soon. [19] ¶ 27.[2] Salz also said she told Wendelken that HR knew about his attendance at the concert when he was supposed to be taking care of his wife, and Wendelken said he would just claim his wife was sick but feeling better by the time he went to the concert. [19] ¶ 27.

On July 29, 2018, Rizzi told Salz and the general foreman that he was going to meet with Wendelken to discuss both the concert and Wendelken's statements about wanting to get fired to collect unemployment. [19] ¶¶ 29–30. Rizzi met with Wendelken that same day, and the foreman also attended. [19] ¶¶ 30, 33. During the meeting, Rizzi and Wendelken discussed the concert and the unemployment comments. [19] ¶¶ 37–39. Wendelken denied telling anyone that he was trying to get fired so he could collect unemployment, which Rizzi said he did not believe. [19] ¶¶ 39–40. Ultimately, Rizzi told Wendelken that he was fired. [19] ¶ 41. The "Term Personnel Action Form" generated for Wendelken's termination stated: "Employee being termed for dishonesty. Chad denied on a number of occasions during our

---

[2] Wendelken disputes that he had these conversations, but he does not dispute that Salz told Rizzi that he made the comments.

conversation that he indicated to another HR employee that he was trying to get fired so he could work for cash and collect unemployment." [19] ¶ 48.

In August 2015, Wendelken contacted the United States Department of Labor about a possible FMLA violation stemming from his termination. [19] ¶ 53. About a month later, Wendelken filed a Chapter 7 voluntary bankruptcy petition. [19] ¶ 54. Neither the initial petition nor the follow-up amended statement of financial affairs disclosed an FMLA claim. [19] ¶¶ 54, 56. A discharge order was entered in Wendelken's bankruptcy case in December 2015, discharging $53,606 in debt. [19] ¶ 57. Wendelken filed this action in April 2017. [1].

## III. Analysis

### A. Real Party in Interest

James Hardie argues that Wendelken's FMLA claim belongs to his bankruptcy estate, not him, and therefore Wendelken cannot bring the suit.[3] When someone files a petition for bankruptcy, her property, including her legal claims, becomes part of the bankruptcy estate. 11 U.S.C. § 541(a)(1). Bankruptcy petitioners are supposed to disclose their legal claims, but if they leave something out so the claim is never administered, the undisclosed claim stays with the estate.

---

[3] This issue—whether a debtor can bring suit for claims that are part of her bankruptcy estate—is "addressed sometimes in terms of standing, sometimes in terms of the real party in interest, and sometimes in terms of both." *Spaine v. Cmty. Contacts, Inc.*, 756 F.3d 542, 546 (7th Cir. 2014). Because the question is who has ownership of the claim, it is a real party in interest issue. *See Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 756 (7th Cir. 2008) (describing Rule 17(a) as "a procedural rule requiring that the complaint be brought in the name of the party to whom that claim 'belongs' or the party who 'according to the governing substantive law, is entitled to enforce the right'" (citation omitted)). *See also Hernandez v. Cook Cty. Sheriff's Office*, No. 07 C 855, 2015 WL 5307627, at *3 n.1 (N.D. Ill. Sept. 10, 2015); *Muhammad v. Aurora Loan Servs., LLC*, No. 13-CV-01915, 2015 WL 1538409, at *4 (N.D. Ill. Mar. 31, 2015).

4

*Matthews v. Potter*, 316 Fed.App'x 518, 521 (7th Cir. 2009) (citing 11 U.S.C. § 554(d)). If a claim is part of the bankruptcy estate, it belongs to the trustee and she is the real party in interest authorized to bring suit, unless the trustee decides to abandon the claim. *Id.*; *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006) ("[T]he estate in bankruptcy, not the debtor, owns all pre-bankruptcy claims."). So "if the event giving rise to the claim occurred before the debtor filed, the claim belongs to the trustee, who has exclusive power to prosecute it." *Kleven v. Walgreen Co.*, 373 Fed.App'x 608, 610 (7th Cir. 2010).

Wendelken contends that his FMLA claim did not yet exist at the time of his bankruptcy petition. Although Wendelken had not yet sued James Hardie when he filed for bankruptcy, the events that formed the basis for his legal claim had already occurred. *See In re Polis*, 217 F.3d 899, 902 (7th Cir. 2000). Wendelken also argues that he was unable to bring his claim until the Department of Labor concluded their investigation and James Hardie nonetheless refused to reinstate him. The FMLA does not require plaintiffs to exhaust their administrative remedies before bringing suit. *See* 29 U.S.C. § 2617(a). Nor is there any reason why Wendelken needed a reinstatement refusal from James Hardie to pursue his FMLA claim—James Hardie had already fired him. And the trustee could not have abandoned a claim that she did not know about. *See Spaine*, 756 F.3d at 546 (finding abandonment where "[t]he bankruptcy case had been reopened and then closed again after the trustee undoubtedly knew about the civil case"). So the trustee of the bankruptcy

5

estate is the real party in interest who is authorized to bring suit on the FMLA claim, not Wendelken.

Because Wendelken is not the real party in interest authorized to bring this suit, Rule 17(a)(3) requires that I provide the trustee with "reasonable time" to "ratify, join, or be substituted into the action." If the trustee does not take any relevant action within 21 days of this order, the complaint will be dismissed with prejudice.

### B. Judicial Estoppel

Even if Wendelken had been a real party in interest authorized to bring suit, he would have been judicially estopped from litigating the claim. Judicial estoppel is an equitable doctrine that prevents a party from taking a certain position in one proceeding, benefitting from that position, and then asserting a contradictory position in a later proceeding. *See Musa v. Comm'r of Internal Revenue*, 854 F.3d 934, 938–39 (7th Cir. 2017). "[C]ourts consistently hold that a debtor who conceals a legal claim and denies owning the asset in bankruptcy is judicially estopped from later pursuing that claim to the debtor's personal benefit." *Matthews*, 316 Fed.App'x at 522. *See also Metrou v. M.A. Mortenson Co.*, 781 F.3d 357, 358 (7th Cir. 2015). Wendelken's bankruptcy petition does not disclose any valuable legal claims.[4]

However, a debtor may inadvertently fail to disclose something on her bankruptcy petition and make an effort to correct her mistake. Under those

---

[4] The bankruptcy petition instructs the disclosure of "contingent and unliquidated claims of every nature," [21] at 78, a prompt that "leav[es] no room for quibbles." *Cannon-Stokes*, 453 F.3d at 447.

6

innocent circumstances, judicial estoppel will not apply absent evidence that the initial concealment was deliberate. *See id*. at 360 ("innocent" omissions like those "based on poor communication between bankruptcy counsel and tort counsel, or based on a belief that the tort claim will not be valuable . . . should not be punished"); *Spaine*, 756 F.3d at 547–48. Whether Wendelken knew he had an FMLA claim against James Hardie at the time of his bankruptcy and whether he knew it needed to be disclosed on his petition is disputed. *See* [28] ¶¶ 28–29. But there is no evidence that Wendelken has ever made an attempt to correct his bankruptcy disclosures.[5] In fact, Wendelken did amend his disclosures at least once, but he did not include the FMLA claim in his amendment. [19] ¶ 56. Even if the initial nondisclosure was inadvertent, the ongoing omission is not and the nondisclosure cannot be characterized as innocent. *See Cannon-Stokes*, 453 F.3d at 448 ("[I]f Cannon-Stokes were really making an honest attempt to pay her debts, then as soon as she realized that it *had* been omitted, she would have filed amended schedules and moved to reopen the bankruptcy, so that the creditors could benefit from any recovery." (emphasis in original)). *See also Spaine*, 756 F.3d at 548 (evidence showing "incomplete schedules *that were timely corrected through an oral disclosure*" does not raise an inference of deceit (emphasis added)). This amounts to "more than an initial nondisclosure on a bankruptcy schedule." *Id*. Because

---

[5] Wendelken argues that James Hardie has no evidence to show that Wendelken has not corrected his disclosures and that James Hardie does not know whether Wendelken has attempted to re-open his bankruptcy case, but James Hardie does not need to provide that evidence—Wendelken does. Wendelken does not offer any evidence to suggest that he has ever tried to correct his bankruptcy disclosures or re-open his bankruptcy case.

7

Wendelken did not disclose his FMLA claim in the bankruptcy and has provided no evidence that he corrected the nondisclosure, he is judicially estopped from litigating it now that the bankruptcy is over.[6]

**C.    Merits**

For the sake of completeness, I address the merits. Wendelken's response to James Hardie's arguments does not contain any citations to case law or the record, relying instead on a general assertion that there is a genuine dispute as to whether Wendelken was terminated for dishonesty or on FMLA-protected grounds. [24] at 9. It is up to the parties—not the court—to come up with the arguments, facts, and law to support their positions. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."); *Sanders v. JGWPT Holdings, Inc.*, No. 14 C 9188, 2016 WL 4009941, at *11 (N.D. Ill. July 26, 2016). By failing to respond to the legal issues raised by James Hardie, Wendelken has waived them. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991).

Wendelken claims that he was wrongfully terminated in violation of the FMLA, but it is unclear whether Wendelken's claim is more specifically that he was terminated because he attended the concert with his daughter while on FMLA leave or because he took FMLA leave at all. In the absence of contrary argument from Wendelken, I accept James Hardie's argument that attending the concert fell outside of the intended purpose of Wendelken's FMLA leave and therefore was not

---

[6] Should the trustee decide to pursue this litigation, the judicial estoppel caused by Wendelken's nondisclosure will not impact the trustee's suit. *See Metrou*, 781 F.3d at 360.

8

an FMLA-protected activity. So what remains is the leave Wendelken took to care for his wife (earlier during the day of the concert), which James Hardie concedes is protected by the FMLA.

Wendelken has not established an interference claim. "In order to prevail on a FMLA interference claim, an employee must establish that (1) she was eligible for the FMLA's protections, (2) her employer was covered by the FMLA, (3) she was entitled to leave under the FMLA, (4) she provided sufficient notice of her intent to take leave, and (5) her employer denied her FMLA benefits to which she was entitled." *Guzman v. Brown Cty.*, 884 F.3d 633, 638 (7th Cir. 2018). James Hardie submits that the last element is missing here, because no one at the company denied Wendelken FMLA leave. To the contrary, it argues, James Hardie encouraged Wendelken to take FMLA leave. Because Wendelken has not identified any particular FMLA benefits he was denied (or pointed to evidence in support of a denial), Wendelken has not established an interference claim.[7]

Nor has Wendelken established a retaliation claim. "In order to prevail on a FMLA retaliation claim, a plaintiff must present evidence that she was subject to

---

[7] To the extent Wendelken's interference theory is that his termination constituted a denial of benefits, the viability of that theory in this context is doubtful. Though termination can interfere with an employee's right to reinstatement, *see Simpson v. Office of Chief Judge of Circuit Court of Will Cty.*, 559 F.3d 706, 712 (7th Cir. 2009), Wendelken was already back at work for a week or so before he was terminated. *See Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 827–28 (7th Cir. 2012) (affirming summary judgment where plaintiff was fired after FMLA leave was granted and before additional requests were made). Anyway, if the termination is the basis of Wendelken's interference claim, the issue would be the same for the interference and retaliation claims—"whether a reasonable jury could conclude that [Wendelken's] exercise of his right to take FMLA leave was a motivating factor in the decision" to fire him. *Shaffer v. Am. Med. Ass'n*, 662 F.3d 439, 444 (7th Cir. 2011). *See also Ransel v. CRST Lincoln Sales, Inc.*, No. 2:10-CV-466 JD, 2014 WL 1207432, at *5 (N.D. Ind. Mar. 24, 2014).

9

an adverse employment action that occurred because she requested or took FMLA leave." *Id.* at 640. Wendelken has not pointed to any facts that suggest his termination was tied to his FMLA leave. James Hardie submits that Wendelken was terminated because Rizzi believed that Wendelken lied to him when he said that he did not tell anyone he was trying to get fired, and Wendelken has not identified any admissible evidence to dispute that. Wendelken cites to findings by the Department of Labor and the administrative law judge from the Illinois Department of Employment Security that he suggests support the notion that he was not fired for dishonesty, but both those documents contain inadmissible hearsay if offered for the truth of the matters asserted.[8] Because Wendelken has put forward no admissible proof that he was terminated because he took FMLA leave (or that James Hardie's justification for his termination was pretextual), no reasonable jury could find in his favor on an FMLA retaliation claim.

---

[8] The ALJ's decision actually cuts against Wendelken's argument. The ALJ found that Wendelken had not actually been dishonest, but that "[h]e was discharged because the employer believed the claimant was being dishonest." [26-2] at 35.

## IV. Conclusion

James Hardie's motion for summary judgment [18] is granted. The trustee of Wendelken's bankruptcy estate has 21 days from the date of this order to ratify, join, or be substituted into this action. If by July 9, 2018 the trustee has not taken any relevant action, the complaint will be dismissed with prejudice and the civil case will be terminated.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: June 18, 2018